<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY PALAZZO,<br><br>Plaintiff,<br><br>v.<br><br>IRA KAPLAN *et al.*,<br><br>Defendants. | No. 25cv14672 (EP) (CLW)<br><br>**MEMORANDUM ORDER** |

*Pro se* Plaintiff Anthony Palazzo has filed a complaint[1] along with multiple motions requesting injunctive and emergent relief. D.E. 2 ("Motion for Order to Show Cause"); D.E. 4 ("Motion to Vacate"); and D.E. 8 ("Emergency Motion for Determination of Jurisdiction") (collectively, the "Three Motions"). Plaintiff alleges that Defendants Ira Kaplan, the municipality of Hudson County, New Jersey, Hudson County Adult Protective Services ("HCAPS"), Harmony Village at Care One, Frank Gioia, Donald Buxton, "AMB Limosine Services" ("AMB"), and Jon and Jane Doe (collectively, "Defendants") have engaged in a variety of illegal and improper conduct that has deprived Plaintiff of his constitutional rights (in addition to violating multiple federal and state laws). The Court construes the Three Motions as requesting injunctive relief under Federal Rule of Civil Procedure 65. For the reasons explained below, the Court will **DENY** the Three Motions.

---

[1] D.E. 1 ("Complaint" or "Compl.").

I.  **BACKGROUND**[2]

As best as the Court can discern, this action arises from a serious of incidents involving Plaintiff, his mother Joan Palazzo, and various individuals allegedly acting under the color of state law.  Plaintiff is a resident of Pennsylvania.  Compl. ¶ 17.  Plaintiff allegedly moved to Pennsylvania in June 2024 and had Joan move in with him around December 2024.[3]  *Id.*  Through an LLC of which he is the sole owner, Plaintiff holds title to a condominium in West New York, New Jersey, which is where Joan resided until she moved in with Plaintiff.  *Id.* ¶ 26; *see generally id.*  When Plaintiff moved Joan to Pennsylvania, he emptied the condo and began showing it for sale.  *Id.* ¶ 29.

In early March 2025, Plaintiff and Donald Buxton (Plaintiff's cousin and Joan's nephew) were emailing regarding Joan, including discussing how Joan was bored in Pennsylvania.  On March 10, 2025, Joan spoke to Susan Buxton[4] on the phone and the two agreed that Joan could stay with the Buxtons at their home in Williamsburg, Virginia for a short period of time.  *Id.* ¶ 29.  Plaintiff arranged for AMB to drive Joan to Virginia.  *Id.* ¶¶ 8, 29.  Although the Complaint does

---

[2] The facts in this section derive from the Complaint's well-pled factual allegations and the attachments thereto, which the Court presumes to be true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, the Court notes that the Complaint and certain exhibits appear to conflict.  In the motion to dismiss context, the Third Circuit has held that if a party's "own exhibits contradict [their] allegations in the complaint, the exhibits control."  *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018) (citing *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010)).

[3] While Plaintiff states December 2025 in the Complaint, the Court assumes this was a typo, as several other documents note that Joan moved into Plaintiff's property in Pennsylvania in December 2024.  *See, e.g.*, D.E. 1-3, Tab 2 ¶ 6.

[4] Although Susan Buxton is not a named party in this action, her husband Donald Buxton is noted to be Plaintiff's maternal cousin, and the nephew of Joan.  Compl. ¶ 7.

not explicitly say so, the Court assumes Joan was to be picked up from Plaintiff's home in Pennsylvania and driven to the Buxtons. *See id.* ¶ 8.

However, Joan never arrived in Virginia. *Id.* It is not entirely clear, but it seems Plaintiff alleges that Donald Buxton re-routed the car service from his home in Virginia to the empty condo in West New York. *See id.* ¶ 32. According to the entrance records for the condo in West New York, Joan was dropped off at 8:50 PM. *Id.* ¶ 30.

Moreover, Plaintiff did not know that Joan was not dropped off in Virginia—indeed, he alleges upon information and belief that AMB's driver misrepresented to Plaintiff the drop off location, falsely stating that Joan had been delivered safely to the Buxtons in Virginia. *Id.* ¶ 15. Plaintiff alleges that the driver was acting under instructions from unknown individuals and diverted Joan to the empty condo in West New York. *Id.* ¶ 15.

On March 15, 2025, for the first time, Plaintiff was informed that his mother had been hospitalized in New Jersey. *Id.* ¶ 18. When he visited her, Plaintiff was told his mother was not yet cleared for release and further testing was needed. *Id.* Shortly thereafter, Plaintiff "became ensnared in a bizarre and disturbing series of interactions with HCAPS and its legal counsel." *Id.* ¶ 19. According to Plaintiff, these conversations were not centered on his Joan's care or well-being, but rather, "entirely on how much money Plaintiff was willing to place into escrow for Joan's benefit." *Id.*

On April 2, 2025, HCAPS labeled Joan an "alleged incapacitated person" and appointed her a temporary guardian. *Id.* ¶ 20. There was allegedly no notice or opportunity for Plaintiff to be heard as to this guardianship. *Id.* Plaintiff also alleges that a *lis pendens* was illegally placed on the condo he owns in West New York on April 14, 2025. *Id.* ¶¶ 27, 46. Plaintiff alleges this is preventing him from selling the condo. *See generally id.* The *lis pendens* has also caused the state

3

court to freeze Plaintiff's assets. *Id.* ¶ 71; D.E. 1-4 at 11 (noting a July 16, 2025, freeze order issued by the Hudson County Surrogate Court against Plaintiff's personal and business bank accounts and assets).

There appears to be at least one related state court action concerning the guardianship of Joan: *In the Matter of Joan Palazzo*, N.J. Super. Ct. Ch. Div., Case No. 329428 (filed March 31, 2025) (herein, the "Related Action"). *See* Compl., Tab E, Affidavit of Benjamin Fontez, March 31, 2025 ("Fontez Affidavit"); D.E. 1-4, Tab H. Fontez filed the eponymous affidavit in the Related Action. According to Fontez—an adult protective services caseworker for HCAPS—he first spoke to Joan on March 13, 2025.[5] Fontez Affidavit ¶ 7. Joan told Fontez on the phone that she was locked in a hotel room and had been abducted by her son (Plaintiff), who had placed her in the hotel room. *Id.* ¶¶ 9, 15, 18. When Fontez found Plaintiff in a hotel in North Bergen, New Jersey, Joan told Fontez that Plaintiff erased Defendant Buxton's phone number from her phone and requested that Fontez and fellow caseworker Naudy Galvez (who accompanied Fontez) contact Buxton and not Plaintiff. *Id.* ¶¶ 26, 36. Fontez, who is also an EMT, requested emergency medical services after Joan became dizzy when Fontez administered certain medical tests in the hotel room. *Id.* ¶¶ 27, 29, 31-32. Joan consented to being admitted to a hospital in New Jersey for further testing. *Id.* ¶ 30. According to Fontez, Joan is a vulnerable adult who requires guardianship services. *Id.* ¶ 47.

In the Related Action, there is a hearing scheduled for September 19, 2025, regarding a motion to dismiss Plaintiff filed (arguing that the state court lacks jurisdiction).[6]

---

[5] It is not clear to the Court what was the impetus for HCAPS' investigation.

[6] In addition to the documents filed on CM/ECF, Plaintiff delivered hard copies of several materials. Not all of these materials have been filed on the docket. Plaintiff references the state court hearing in Tab 1 of a binder titled "Urgent Constitutional Crisis" which he delivered to the Court on September 2, 2025. Tab 1 is a letter dated September 1, 2025, addressed to the

4

Based on the above, Plaintiff asserts twenty-one causes of action (alleging Defendants violated multiple federal and state laws). Compl. In addition to injunctive relief, Plaintiff also requests compensatory and punitive damages. *See generally id.*

## II.   LEGAL STANDARD

Granting preliminary injunctive relief "is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).

To obtain injunctive relief, the moving party must show: "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transom. Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)). In addition, "the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id.* (quoting *Del. River Port Auth.*, 501 F.2d at 920). The first two factors—likelihood of success on the merits and irreparable harm—are considered the "most critical" factors. *Id.* at 179 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

---

Undersigned's Courtroom Deputy. Plaintiff shall ensure that all materials he has delivered to the Court are also provided to all Defendants.

The Court construes Plaintiff's filings liberally because he is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, however, "the burden of proving the foregoing elements rests with the moving party." *Cooper v. City of Philadelphia, 18th Dist.*, No. 93-3007, 1993 WL 274192, at *1 (E.D. Pa. July 2, 1993). In reaching a decision on a request for injunctive relief, "a district court sits as both the trier of fact and the arbiter of legal disputes. A court must, therefore, make 'findings of fact and conclusions of law upon the granting or refusing of a preliminary injunction.'" *Fu v. Allriver-Direct*, No. 25-615, 2025 WL 1554002, at *2 (W.D. Pa. June 2, 2025) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990)).

### III.    ANALYSIS

Plaintiff's motions fail because he cannot make a threshold showing of immediate irreparable harm. "A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Continental Grp. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)). "A showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a clear showing of *immediate* irreparable harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (citation modified).

Plaintiff has failed to identify any immediate injury that warrants injunctive relief. The Court struggles to follow Plaintiff's arguments across his motions, which are at points disjointed and convoluted, but as best as the Court can discern, Plaintiff makes the following arguments regarding irreparable harm: "the *lis pendens* has already destroyed a unique sale and renders title unmarketable; the freeze blocks access to funds for basic living and business obligations, [Plaintiff] *risks* default and foreclosure, and [the Related Action] chills Plaintiffs ability to care for his mother-harms not compensable by money alone." D.E. 2-2 at 17 (emphasis added). And at

another point, Plaintiff states that he "faces immediate and irreparable injury, including loss of a unique property sale, mortgage default, and continuing deprivation of funds necessary for living and business expenses."  D.E. 1-5 at 6.

While the Court recognizes that Plaintiff alleges he has suffered past harm and that he may suffer harm in the future, his own arguments belie his contention that he faces any *immediate* harm. For instance, Plaintiff notes he faces a "risk" of default and foreclosure—but a risk of future harm is insufficient.  *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000) ("The risk of irreparable harm must not be speculative.").  In addition, Plaintiff does not provide additional support for his argument that the *lis pendens* is resulting in immediate and irreparable harm, nor does he explain how his ability to care for his mother is resulting in immediate and irreparable harm to him.  Similarly, a showing a past harm—here, a blocked sale on the condo—is also insufficient.  *See Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 530 (E.D. Pa. 2018) ("[A] showing of past harm, without more, is insufficient to justify the issuance of a preliminary injunction.").

Plaintiff also asserts in his briefing that he is entitled to immediate injunctive relief from this Court because the upcoming hearing in the Related Action (on a motion filed by Plaintiff) is "far too late."  Emergency Motion for Determination of Jurisdiction, Tab 4.  However, "injunctive relief will not be granted merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Elmilligy v. Beyer*, No. 25-12720, 2025 WL 2084395, at *5 (D.N.J. June 24, 2025) (quoting *Zokaites v. Land-Cellular Corp.*, 424 F. Supp. 2d 824, 832 (W.D. Pa. 2006)).  And, as the Supreme Court has made clear, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden

of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Put simply, Plaintiff has not met his burden of showing irreparable harm.

Even had Plaintiff elaborated on these arguments, the Court would still find Plaintiff has failed to establish irreparable injury or that injunctive relief is warranted because the exhibits filed by Plaintiff are incomplete[7] and at points contradictory. "[A]n assertion of irreparable harm must be based on concrete evidence and cannot be sustained 'on the basis of bald and conclusory statements.'" *Bradley v. Amazon.com, Inc.*, No. 17-1587, 2021 WL 5631754, at *3 (E.D. Pa. Dec. 1, 2021) (quoting *Cornette v. Graver*, No. 19-219, 2020 WL 4059589, at *24 (W.D. Pa. July 20, 2020)). Plaintiff's evidence is far from concrete. For example, while Plaintiff notes a chilling effect on his ability to care for his mother, he also provides an affidavit which states his mother believes that Plaintiff abducted her. Fontez Affidavit ¶¶ 9, 15, 18. Given the many conflicting assertions throughout the exhibits Plaintiff attaches to his filings, the Court cannot conclude that it should grant Plaintiff's extraordinary requested relief, including releasing Joan into Plaintiff's custody. D.E. 1-4 at 16. Because "Plaintiff has not presented, to the court's satisfaction, evidence in support of [his] motion[s]," the Court will **DENY** the Three Motions. *Cooper*, 1993 WL 274192, at *1.[8]

---

[7] For the avoidance of doubt, the incompleteness of the filings is not related to the *volume* of the filings. While Plaintiff has organized exhibits in binders with a table of contents in each binder, Plaintiff does little to connect these exhibits to his arguments or show how the exhibits support his contentions that injunctive relief is merited here. As noted elsewhere in this order, Plaintiff has failed to provide the Court with key pieces to the puzzle—largely related to the facts underlying this action and how this action overlaps with the Related Action. Plaintiff's failure to do so also gives the Court reason to believe Plaintiff would be unlikely to succeed on the merits of his claims.

[8] Because Plaintiff fails to show irreparable injury, the Court does not analyze whether Plaintiff has a likelihood of success on the merits of his claims. *See Reilly*, 858 F.3d at 176. Nevertheless, the Court notes that Plaintiff would benefit from meaningfully clarifying his allegations in an amended complaint. Despite providing the Court with dozens of exhibits which span hundreds of pages, Plaintiff has not made clear some of the most basic of facts in this action. And while

Furthermore, in his Emergency Motion for Determination of Jurisdiction Plaintiff argues that Pennsylvania, rather than New Jersey, is the appropriate forum under the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act. *See generally* Emergency Motion for Determination of Jurisdiction. After arguing as to why New Jersey lacks jurisdiction over the Related Action, Plaintiff then contends that *Younger* abstention is not proper. *Id.*

The Court is not so sure. The *Younger* abstention doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Wattie-Bey v. Att'y Gen.'s Off.*, 424 F. App'x 95, 96 (3d Cir. 2011) (quoting *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992)). Accordingly, district courts are required to abstain from exercising jurisdiction over a claim where the resolution of that claim in federal court "would offend principles of comity by interfering with an ongoing state proceeding." *Id.* at 96-97 (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010)). For *Younger* abstention to apply, the ongoing state proceeding must fit into at least one of three categories, which the Supreme Court has "stressed" are "exceptional" circumstances. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). They are: "(1) state criminal prosecutions; (2) certain quasi-criminal civil enforcement proceedings; or (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Shallenberger v. Allegheny Cnty.*, No. 20-73, 2020 WL 1465853, at *6 (W.D. Pa. Mar. 26, 2020) (quoting *id.* at 78).

As another district court in this circuit reasoned in a similar circumstance, state court proceedings involving protective services for the elderly are unique to the state court's ability to

---

Plaintiff devotes the lion share of his briefs to addressing abstention issues, he does not sufficiently connect his exhibits to the elements of each cause of action he brings.

9

perform judicial functions and therefore fall under the third aforementioned category of circumstances where federal courts should abstain under *Younger*. *Dovin v. Chester Cnty. Dep't of Aging Servs.*, No. 23-3175, 2023 WL 5651983, at *4 (E.D. Pa. Aug. 31, 2023). Nevertheless, having found no irreparable injury, the Court will not proceed with a full *Younger* analysis. Nor will the Court decide whether *Younger* provides a separate basis for denying the Three Motions or requires the Cout from abstaining in this action.

IV. **CONCLUSION AND ORDER**

Accordingly, having considered the Three Motions and all related items submitted to the Court, and having determined that oral argument is not needed,[9]

**IT IS**, on this **9th** day of September 2025, for the reasons set forth above,

**ORDERED** that Plaintiff's Motion for Order to Show Cause, D.E. 2, is **DENIED**; and it is further

**ORDERED** that Plaintiff's Motion to Vacate, D.E. 4, is **DENIED**; and it is further

**ORDERED** that Plaintiff's Emergency Motion for Determination of Jurisdiction, D.E. 8, is **DENIED**; and it is finally

**ORDERED** that the Clerk of Court shall send Plaintiff a copy of this Order to the email address provided on CM/ECF.

Evelyn Padin, U.S.D.J.

---

[9] While Plaintiff has requested a hearing, the Court notes it need not hold oral argument on Plaintiff's motions for a TRO and preliminary injunction. *See Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 324 (3d Cir. 2015) (holding that it is the court's prerogative to determine whether a hearing is necessary to address a "disputed factual issue").